Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 18, 2003      Decided October 10, 2003

No. 02-1166

MARSEILLES LAND AND WATER COMPANY,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Elizabeth W. Whittle* argued the cause and filed the briefs for petitioner.

*Beth G. Pacella*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Cynthia A. Marlette*, General Counsel, and *Dennis Lane*, Solicitor.

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: ROGERS and ROBERTS, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*: Petitioner Marseilles Land and Water Company (Land Company) challenges the decision of the Federal Energy Regulatory Commission (FERC or Commission) to reject as untimely Land Company's notice of intent to submit a development application for a hydroelectric project, as well as FERC's decision to reject its request to waive the deadline for filing the notice of intent. We deny the petition for review.

**I.**

A company wishing to investigate an area to determine whether it is suitable for a hydroelectric project may request a preliminary permit application from FERC. This permit gives the holder the right to study the site and a preference over other companies who may wish to develop the project within up to three years from the issuance of the permit. *See* 16 U.S.C. § 798.

The preliminary permit does not itself, however, give the bearer the right to develop the project. Companies interested in developing a hydroelectric project must first obtain a license from FERC by filing a "development" or "license" application. FERC assesses timely filed development applications, and grants a license to the applicant whose proposal "is best adapted to serve the public interest." 16 U.S.C. § 808(a)(2). Once one interested party files a permit application, the Commission publishes notice of the filing in the Federal Register, along with a prescribed "intervention deadline," by which time other interested parties must file applications (or notices of intent to file applications) in competition with the initial permit application. *See* 18 C.F.R. § 4.36.[1]

---

[1] Competing permit applications are due on the intervention deadline, *see* 18 C.F.R. §§ 4.36(a)(1). Filing a notice of intent, however, extends the deadline by thirty days. *See id.* § 4.36(a)(2).

While a permit grants the holder a preference should it decide to file a development application, it is not necessary for anyone to apply for a permit prior to applying for a license; the permit application process can be bypassed altogether. If the initial application is a development application instead of a permit application, FERC follows a similar procedure as if a permit application had been filed. The Commission publishes notice of the filing in the Federal Register and sets an "intervention deadline," by which competing development applications (or notices of intent) must be received to be considered.[2]

Land Company filed a preliminary permit application on October 31, 2000, to study a site on the Illinois River to determine whether the site would be suitable for a hydroelectric project. FERC published notice of the application on November 16, 2000, and set January 16, 2001, as the intervention deadline. On January 14, 2001, two days before the intervention deadline, Marseilles Hydro Power, LLC (Hydro Power) filed a notice of intent to file a *development* application for the same site, and it filed the application on May 14, 2001. No other party submitted an application before the intervention deadline. On August 16, 2001, FERC published notice of Hydro Power's filing, and established October 15, 2001, as the deadline for comments about the application. FERC made clear, however, that the deadline for filing competing development applications had passed:

> Public notice of the filing of the initial development application [presumably meaning Land Company's preliminary permit application], which has already been given, established the due date for filing competing applications or notices of intent. Under the

___

[2] As in the case of competing permit applications, *see* note 1, *supra*, filing a notice of intent to submit a competing development application extends the applicable deadline. While the competing development applications must generally be submitted by the intervention deadline, *see* 18 C.F.R. § 4.36(b)(1), filing a notice of intent gives the applicant an additional 120 days. *See* 18 C.F.R. § 4.36(b)(2).

Commission's regulations, any competing develop-
ment application must be filed in response to and in
compliance with public notice of the initial develop-
ment application. No competing applications or no-
tices of intent may be filed in response to this notice.

66 Fed. Reg. 44,129 (Aug. 16, 2001).

Notwithstanding FERC's statement that it would not ac-
cept any more applications, Land Company filed a notice of
intent on October 15, 2001, to file a development application
competing with Hydro Power's. FERC, viewing the deadline
for all notices of intent to be January 16, 2001, refused to
consider Land Company's late submission, and this challenge
followed.

## II.

Land Company contends that Hydro Power's filing was an
"initial development application," and that 18 C.F.R. § 4.36(b)
gives developers an opportunity to file development applica-
tions competing with that sort of application. *See* 18 C.F.R.
§ 4.36(b)(1) (providing that competing development applica-
tions may be submitted by the intervention deadline estab-
lished with the filing of the initial development application);
and *id.* § 4.36(b)(2) (providing that competing development
applications filed pursuant to a timely notice of intent may be
submitted within 120 days after the intervention deadline).
Land Company points to the definition of an initial develop-
ment application provided in FERC regulations:

*Initial development application* means any accept-
able application for either a license or exemption
from licensing for a proposed water power project
that would develop, conserve, and utilize, in whole or
in part, water resources for which no other accept-
able application for a license or exemption from
licensing has been submitted for filing and is pend-
ing before the Commission.

18 C.F.R. § 4.30(b)(11)(i). According to Land Company, Hydro Power's filing *was* an initial development application because it is an application for a license to use resources for which no *license application* was pending—even though a preliminary permit application had been filed.

FERC, however, contends that Hydro Power's filing was not an initial development application, but rather a competing one—competing, that is, with Land Company's preliminary permit application. The Commission directs us to another definition, the one for a competing development application:

> *Competing development application* means any application for a license or exemption from licensing for a proposed water power project that would develop, conserve, and utilize, in whole or in part, the same or mutually exclusive water resources that would be developed, conserved, and utilized by a proposed water power project for which an initial preliminary permit or initial development application has been filed and is pending before the Commission.

18 C.F.R. § 4.30(b)(1)(i). In the Commission's view, Hydro Power's filing is a *competing* development application, because it is an application for a license that would use the same resources that would be used by the project considered by Land Company's then-pending preliminary permit application. If FERC is correct, 18 C.F.R. § 4.36(a) ("Deadlines for filing applications in competition with an initial preliminary permit application"), rather than 18 C.F.R. § 4.36(b) ("Deadlines for filing applications in competition with an initial development application") applies. And pursuant to 18 C.F.R. § 4.36(a), the operative deadline for competing applications is the intervention deadline established at the time of the filing of Land Company's preliminary permit application, *i.e.*, January 16, 2001, making Land Company's development application late.

We are left in a bit of a quandary because it appears that Hydro Power's application fits both definitions. The Commission points out that it actually amended its regulations in

1985 to alter its prior *Georgia Pacific Corp.* "rule," which had permitted a new round of applications under a new intervention deadline when an initial development application was filed. *See In re: Georgia Pacific Corp.*, 17 F.E.R.C. ¶ 61,174 (1981). But the preamble to the regulation (Order No. 413), which states that it intended "to introduce greater certainty into the process for all prospective applicants" by reversing the *Georgia Pacific* rule, does not squarely answer petitioner's linguistic argument drawn from the wording of the regulation itself.

Thus, Land Company contends that the Commission's interpretation of its regulation is unreasonable (arbitrary and capricious) because it contemplates necessarily that a permit applicant would, indeed should, file a development application competing against itself—which it insists is a logical absurdity. If a permit applicant does not so file during the intervention period and, as in this case, another party files a development application on or near the intervention deadline, the permit applicant not only loses its preference, it is foreclosed from even competing with the development applicant. Therefore, a permit applicant who wishes to ensure it remains in the game, according to the Commission's interpretation of its regulation, must file a development application during the intervention period even if that application competes only against itself.

The Commission concedes that petitioner's analysis is correct, but points out that in a prior case, *In re: Tropicana Ltd. Partnership*, 65 F.E.R.C. ¶ 61,094 (1993), it set forth its interpretation of its regulations and rejected the very same argument petitioner raises here—that FERC's interpretation is unreasonable because that construction forces an initial permit applicant to compete against itself. The Commission explained in *Tropicana* that it wished to induce all potential applicants to come in to the process early, and therefore explicitly held that "[t]he Commission's notice of a development application filed in competition with an initial permit application does not establish a new competition deadline for subsequent development applications." *Id.*

Since we gather that it is significantly more time consuming and expensive for a potential applicant to prepare a development application, as opposed to a mere permit application, the Commission's interpretation of its rule as explained in *Tropicana* puts a potential applicant to its choice. If it wishes to ensure its priority that an initial permit application gives, it must follow up with a development application (or a notice of intent to file such application) within the intervention period. Otherwise, it risks losing its priority if a competitor files during the intervention period and it does not. Although petitioner claims that it did not have adequate notice of the Commission's policy, a party before FERC is deemed to have read relevant Commission cases. Therefore, we are not faced with a situation such as we encountered in *Satellite Broadcasting Co. v. FCC*, 824 F.2d 1 (D.C. Cir. 1987), where we held that an agency's interpretation of its regulation, even if reasonable, is not a legitimate basis for "penalizing a private party—without first providing adequate notice" of its interpretation if the private party's contrary interpretation is also reasonable. *Id.* at 3.

Still, if FERC's interpretation of its regulation is wholly unreasonable, it does not suffice to establish that petitioner was on notice of that interpretation. Even if petitioner admitted that it examined the *Tropicana* decision, it could still prevail if the Commission's regulation clearly supported petitioner's position—and only petitioner's position. For an administrative agency may not slip by the notice and comment rule-making requirements needed to amend a rule by merely adopting a *de facto* amendment to its regulation through adjudication. *See Air Transp. Ass'n of Am. v. FAA*, 291 F.3d 49, 55–56 (D.C. Cir. 2002); *Paralyzed Veterans of Am. v. D.C. Arena, L.P.*, 117 F.3d 579, 586 (D.C. Cir. 1997), *cert. denied* 523 U.S. 1003 (1998). On the other hand, agencies are entitled to great deference in the interpretation of their own rules. *See, e.g., Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414 (1945); *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 150–51 (1991); *Fina Oil & Chem. Co.*

*v. Norton*, 332 F.3d 672, 676 (D.C. Cir. 2003). If we conclude that the *Tropicana* decision was not a "plainly erroneous" interpretation of the rule, FERC prevails. *Bowles*, *supra*, at 414.

Although the Commission's interpretation of its regulation does assume rather awkwardly that a permit applicant's subsequent development application may compete with itself, petitioner's argument rests essentially on the proposition that Hydro Power's application meets the definition of an "initial development application," and therefore § 4.36(b) guarantees its right to file a competing development application within a new intervention period. But—as we have noted—Hydro Power's application also perfectly meets the definition of a "competing development application." And if Hydro Power's application is a competing development application then the original "deadline" created by Land Company's initial permit application applies. It is thus hard to find a better paradigm of an ambiguous regulation. Under the circumstances, we think FERC was clearly authorized to resolve the ambiguity in the *Tropicana* decision.

* * * *

Accordingly, the petition for review is denied.