**AMERICA WEST AIRLINES, INC., Petitioner,**

v.

**James H. BURNLEY, IV, Secretary U.S. Department of Transportation, Respondents,**

**USAir Group, Inc., Piedmont Aviation, Inc., Intervenors.**

**No. 87–1639.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 12, 1988.

Decided Feb. 19, 1988.

John E. Gillick, with whom, Robert Reed Gray and Robert A. Burka, Washington, D.C., were on the brief, for petitioner.

Diane R. Liff, Asst. Gen. Counsel for Litigation, Dept. of Transp., with whom, B.

Wayne Vance, Gen. Counsel, Dept. of Transp., Washington, D.C., was on the brief, for respondents. Thomas L. Ray, Counsel, Dept. of Transp., Washington, D.C., also entered an appearance for respondents.

Michael S. Sundermeyer, with whom, Brendan V. Sullivan, Jr., Lee M. Hydeman, Stephen H. Lachter, James T. Lloyd, for USAir Group, Inc.; Robert M. Lichtman, Washington, D.C., Joseph F. Healy, Jr. and David R. Murchison, Winston–Salem, N.C., for Piedmont Aviation, Inc., were on the brief, for intervenors, USAir Group, Inc. and Piedmont Aviation, Inc.

Before SILBERMAN and SENTELLE, Circuit Judges, and GREENE,* District Judge.

Opinion PER CURIAM.

PER CURIAM:

This matter is before the Court on petition of America West Airlines, Inc. (America West) for review of Department of Transportation orders approving the merger of USAir Group, Inc. (USAir) and Piedmont Aviation, Inc. (Piedmont). America West contends that the merger will result in impermissible entry barriers, increased market power and a substantial reduction of competition in the relevant markets. Since it appeared to the Court that a threshold question—the standing of America West to bring the petition—could be dispositive, the Court requested supplemental briefs on that issue.[1] Upon review, the Court finds, for the reasons stated below, that America West lacks standing and therefore dismisses the petition.

In a Final Order dated October 30, 1987, the Department of Transportation (DOT), acting pursuant to 49 U.S.C. § 1378, approved the acquisition by USAir of Piedmont. On November 1, 1987, America West petitioned this Court for review of that final order. USAir and Piedmont were permitted to intervene and America West's motion to stay the order was denied. The merits were then briefed by the parties on an expedited basis and the Court heard oral argument on January 12, 1988, at which time it directed the parties to submit supplemental briefs limited to the question of America West's standing, both Article III and antitrust/competitor,[2] to challenge DOT's order.

■ To invoke this Court's Article III powers, America West must demonstrate standing in a constitutional sense. To demonstrate its standing, America West must allege and prove three elements: (1) personal injury; (2) fairly traceable to the defendant's allegedly unlawful conduct; and (3) likely to be redressed by the requested relief. *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

■ America West has alleged two injuries. First, it contends that the approval of the merger will inhibit eastward expansion of its airline service, although it does not specify any city-pair markets. Second, it contends that the merger will make it more difficult for America West to obtain slots at Washington National Airport (DCA) and LaGuardia (LGA), specifically because the increased concentration of the slots will increase their value to the post-merger USAir.[3] *Assuming* that these two "injuries" constitute personal injury for purposes of constitutional standing, America West has, nevertheless, failed to demonstrate the existence of the remaining two elements as set out in *Allen, supra.*

In *California Association of the Physically Handicapped, Inc. v. FCC*, 778 F.2d 823 (D.C.Cir.1985), CAPH challenged use of a "short form" process to approve a transfer in ownership of Metromedia. CAPH

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

1. *See Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977).

2. 49 U.S.C. § 1378(b)(1)(A) prohibits approval of any merger "if it would result in a monopoly...." *Cf.* Clayton Act, 15 U.S.C. § 18.

3. It is by no means certain that a value increase will in fact result. We assume it will, since it makes no difference to the outcome.

claimed it was injured by Metromedia's alleged neglect of its responsibilities to the handicapped. *Id.* at 825. This Court held that CAPH did not satisfy the causation requirement because "CAPH's alleged injury occurred before, existed at the time of, and continued unchanged" after the transfer of ownership. *Id.* at 827. CAPH also did not satisfy the redressability requirement because "even if the Commission had denied the transfer application, Metromedia, despite its allegedly bad record, would remain in control of the stations." *Id.* The Court also pointed out that CAPH's grievance "is properly and pointedly raised in a license renewal proceeding," not in a transfer of ownership proceeding. *Id.* at 826.

Applying *California Association* to the instant case, neither of America West's alleged injuries are sufficient to confer Article III standing. First, America West's generalized allegations about flying eastward are neither causally related to the Department's Final Order nor redressable by reversal of the Order. Just as CAPH's injuries did not stem from the FCC's approval of a transfer in ownership, America West's alleged inability to fly in "the East" does not stem from the Department's Final Order. There is no causal link to the Order because America West did not prove or even allege any interest in serving any city-pair market affected by this merger, or indeed *any* city-pair market. In addition, even if the merger were overturned by this Court, America West would be no better

off because it has not identified any interest in serving any identified market actually affected by the merger, certainly none as to which it would have greater access without the Department's order.

Second, America West's inability to purchase slots at DCA and LGA is neither caused by the Final Order nor redressed by a reversal of that Order. The Final Order cannot be the cause of an injury related to slots because neither the merger nor the Final Order deny slots to America West.[4] America West has simply failed to demonstrate that reversal of the Final Order would result in its acquisition of any slots at either airport. Moreover, just as the Court in *California Association* pointed out that the grievances about the handicapped are "properly and pointedly raised in a license renewal proceeding," 778 F.2d at 826, America West's grievances about slots are "properly and pointedly" raised in the Department's ongoing rulemaking proceeding about slots.

America West has clearly failed to establish the necessary elements of standing and it is therefore unnecessary to reach the substantive issues. The petition is dismissed.[5]

---

**4.** America West admits that, despite its efforts, it was unable to secure slots at DCA and LGA before this merger.

**5.** Since we have determined that America West has no Article III standing, it is unnecessary for us to reach the question of antitrust/competitor standing. However, if the Court were to reach that issue, it would seem to be controlled by *Cargill, Inc. v. Monfort of Colorado, Inc.,* ——

U.S. ——, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986), and the result would appear to be the same. *Cargill* involved determination of standing under § 7 of the Clayton Act, 15 U.S.C. § 18, the section on which the relevant portion of 49 U.S.C. § 1378 is modeled, and held the status of competitor does not confer antitrust standing in the absence of an antitrust injury as defined by cases applying the Clayton Act.