**MICROWAVE ACQUISITION CORPORATION,**
Appellant,

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Qwest Communications Corporation, Intervenor.**

**No. 97–1416.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 14, 1998.

Decided June 19, 1998.

Donald J. Evans argued the cause for the appellant.

Jeffrey H. Dygert, Counsel, Federal Communications Commission, argued the cause for the appellee. Christopher J. Wright, General Counsel, and Daniel M. Armstrong, Associate General Counsel, Federal Communications Commission, were on brief. John E. Ingle, Deputy Associate General Counsel, and Joel Marcus, Counsel, Federal Communications Commission, entered appearances.

Margaret L. Tobey was on brief for the intervenor.

Before: SILBERMAN, HENDERSON and ROGERS, Circuit Judges.

KAREN LECRAFT HENDERSON, Circuit Judge:

Microwave Acquisition Corp. (MAC) appeals a decision of the Federal Communications Commission (Commission) denying review of an order approving transfer of Qwest Communications, Inc. (Qwest) from MCI Communications Corp. (MCI) to Southern Pacific Telecommunications Company (SP). *See In re Application of MCI Communications Corp.*, 12 F.C.C.R. 7790 (1997). We hold that MAC lacks standing under Article III of the United States Constitution to appeal the Commission's decision because MAC has not alleged a concrete injury fairly traceable to the decision and redressable in this proceeding.[1]

Qwest provides domestic interexchange telecommunication service in various parts of

1. Because we dismiss for lack of standing we do not consider MAC's arguments on the merits.

the United States through its own digital microwave network and through interconnection with other carriers. MCI purchased Qwest in 1992 and a short time later began negotiations to sell Qwest to MAC, which MAC alleges resulted in an enforceable contract. In 1994 MCI agreed to sell Qwest to SP and applied to the Commission for approval of the transfer as required by 47 U.S.C. § 310(d).[2] In May 1994 MAC filed a motion with the Commission to deny the transfer and also filed separate lawsuits in New York state court against MCI and SP, asserting a contractual right to acquire Qwest and seeking specific performance of the allegedly breached contract. On December 28, 1994 the Common Carrier Bureau (Bureau) approved the transfer to SP, concluding, *inter alia,* that MAC lacked statutory standing to oppose the transfer under 47 U.S.C. § 309(d)(1) because its alleged injury, the failure to acquire Qwest, was neither fairly traceable to nor redressable in the transfer proceeding. *See In re Application of MCI Communications Corp.,* 10 F.C.C.R. 1072 (1994).

MAC filed an application for review of the Bureau decision with the Commission, which denied the application in a decision released June 2, 1997. The Commission first agreed with the Bureau that MAC lacked standing because MAC's injury, which "consists of the transfer of Qwest to Southern, instead of MAC, in alleged breach of a contract that MAC claims it had entered with MCI," 12 F.C.C.R. at 7794–95, was neither traceable to Commission approval of the transfer nor redressable by reversal thereof. The Commission also rejected each of MAC's arguments on the merits. MAC appeals the Commission's denial of review.

■■■ " 'In order to establish standing under Article III, a complainant must allege (1) a personal injury-in-fact that is (2) "fairly traceable" to the defendant's conduct and (3) redressable by the relief requested.' " *Sun-Com Mobile & Data, Inc. v. FCC,* 87 F.3d 1386, 1387–88 (D.C.Cir.1996) (quoting *Branton v. FCC,* 993 F.2d 906, 908 (D.C.Cir.1993) (quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1610, 128 L.Ed.2d 338 (1994)). MAC's allegations of injury have not been clear or consistent but at oral argument MAC identified two distinct ways in which it was injured by the Commission's actions. Neither of the injuries satisfies the tripartite standing test.

MAC first asserts as injury the loss of its contractual right to acquire Qwest. The alleged injury meets neither the traceability nor the redressability requirement for standing. "Causation, or 'traceability,' examines whether it is substantially probable that the challenged acts of the defendant, not of some absent third party, will cause the particularized injury of the plaintiff." *Florida Audubon Soc'y v. Bentsen,* 94 F.3d 658, 663 (D.C.Cir.1996) (*en banc*) (citations omitted). MAC's loss of Qwest is, as the Commission concluded, attributable not to any action of the Commission but to MCI's alleged breach of its contract to sell Qwest to MAC. The transfer proceeding could not have caused the alleged breach which occurred before the transfer application was ever filed and would have continued whatever the Commission's decision. Denial of the transfer might have delayed or frustrated the sale of Qwest to SP but it would not have led to MAC's acquisition of Qwest. "In sum, [MAC's] alleged injury occurred before, existed at the time of, and continued unchanged after the challenged Commission action" and therefore cannot be fairly traced to the transfer approval. *California Ass'n of Physically Handicapped v. FCC,* 778 F.2d 823, 827 (D.C.Cir.1985).[3]

2. The statute provides in part:

(d) Assignment and transfer of construction permit or station license
No construction permit or station license, or any rights thereunder, shall be transferred, assigned, or disposed of in any manner, voluntarily or involuntarily, directly or indirectly, or by transfer of control of any corporation holding such permit or license, to any person ex-

cept upon application to the Commission and upon finding by the Commission that the public interest, convenience, and necessity will be served thereby.

3. In support of its claim of causation, MAC cites our decision in *Telephone & Data Sys., Inc. v. FCC,* 19 F.3d 42 (D.C.Cir.1994), (*TDS*), in which the court held that the appellant, who claimed a contractual interest in a cellular tele-

MAC's first injury fails as well the redressability requirement for Article III standing. "Typically, redressability and traceability overlap as two sides of a causation coin." *Dynalantic Corp. v. Department of Defense*, 115 F.3d 1012, 1017 (D.C.Cir. 1997). "Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Florida Audubon Soc'y*, 94 F.3d at 663–64 (footnote & citations omitted). The relief MAC now seeks—that "[t]he FCC's orders should be reversed and the order approving the transfer should be vacated," Brief of Appellant at 29–30—will not result in MAC's acquisition of Qwest because, as we have already concluded, the transfer order is not the cause of the alleged contractual breach. *See America West Airlines, Inc. v. Burnley*, 838 F.2d 1343, 1344 (D.C.Cir.1988) (where injury alleged—airline's inability to obtain airport slots—is not traceable to Department of Transportation order approving merger of airlines, reversal of order will not redress injury).

■ MAC's second injury fares no better than the first. MAC asserts it was injured by the Commission's order because the order has influenced and will continue to influence the state court litigation in New York. Specifically MAC contends that the sale of Qwest to SP, which the Commission order authorized, has deprived MAC of the remedy of specific performance in state court, whatever the outcome on the merits there.[4] Assuming, without concluding, that MAC is correct and can satisfy the causation prong here, it has nonetheless failed to demonstrate redressability. As we understand MAC's position, the desired remedy is unavailable because Qwest is no longer in the possession and control of MCI and therefore no longer within the New York court's equitable authority to order MCI to convey.[5] Yet we know of no action we can take to return Qwest to MCI, either on our own or in a remand to the Commission—thereby restoring the specific performance remedy (if it has in fact been lost). We therefore conclude that the second injury, even if caused by the Commission's decision, is not redressable in this proceeding.[6]

Finally, MAC claims standing under circuit precedent, alleging it has suffered the same injury as the appellant in *Granik v. FCC*, 234 F.2d 682 (D.C.Cir.1956), whom the court found to have standing to oppose transfer of a license in which he claimed a breached option right. In *Granik*, however, the court addressed only whether the appellant had *statutory* standing to oppose the transfer under sections 309(c) and 405 of the Federal Communications Act. The court did not expressly consider or decide the question of *constitutional* standing and did not—indeed

---

phone licensee, had standing to oppose the licensee's application to construct a cellular system. The situation in *TDS* is distinguishable. In finding standing there, the court relied on the "narrow proposition" that "injurious private conduct is fairly traceable to the administrative action contested in the suit if that action authorized the conduct or established its legality." 19 F.3d at 47. Applying this proposition, the court held TDS had standing because the Commission's action had "upheld the legality of the very [contract] provisions whose exercise has inflicted injury on TDS, provisions that a contrary holding would have abrogated." *Id.* Not so here. The Commission's transfer approval order did not purport to address in any way the provisions of the alleged contract between MAC and MCI. Nor did the Commission authorize the alleged injury, namely MCI's refusal to sell Qwest to MAC.

4. MAC also suggests that the Commission decision to approve the transfer will in some way influence the state court's decision on the merits of MAC's breach of contract claim——a proposition that leaves us flummoxed.

5. A copy of a decision dismissing the state court suit against MCI, submitted by the intervenor, states: "[I]t is clear that any claim for specific performance is moot. Qwest has been sold to SP Telecom and MCI is not capable of performance." *MAC v. MCI*, No. 113036/94, slip op. at 6 (N.Y. Sup.Ct. filed Mar. 11, 1997). We have no license to consider whether the quoted language reflects an accurate interpretation of New York law.

6. In its brief MAC alleged a third injury, that "by permitting the transfer, the FCC has fundamentally impaired the value of the asset in dispute, *i.e.*, Qwest." MAC has not explained the nature of this speculative injury nor cited any evidence to support it. In any event, because neither we nor the Commission can restore Qwest to its former status, this injury too is unredressable here.

could not—apply the tripartite standing test which the Supreme Court only later formulated. *See Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 40, 38, 41, 96 S.Ct. 1917, 48 I..Ed.2d 450 (1976) (first articulating three requirements that party allege "concrete injury" "likely to be redressed by a favorable decision" that "can be traced to the challenged action of the defendant"). Accordingly, we find the decision in *Granik* inapposite.

Because appellant MAC lacks standing under Article III of the United States Constitution, its appeal is

*Dismissed.*