# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 8, 2011         Decided April 12, 2011

No. 10-1151

GLENN CHERRY,
APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

SCOTT SAVAGE, RECEIVER FOR TAMA BROADCASTING, INC.,
INTERVENOR

———

Appeal of Orders of the Federal Communications
Commission

———

*Dennis J. Kelly* argued the cause and filed the briefs for appellant.

*Stewart Block*, Counsel, Federal Communications Commission, argued the cause for appellee. With him on the brief were *Austin C. Schlick*, General Counsel, *Peter Karanjia*, Deputy General Counsel, and *Richard K. Welch*, Acting Associate General Counsel.

*Mark J. Prak*, *Julia C. Ambrose*, and *Eric M. David* were on the brief for intervenor.

Before: SENTELLE, *Chief Judge*, TATEL, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*:  In September 2008, as part of a judicial foreclosure action brought against Tama Broadcasting, Inc. ("Tama") by its creditor, D.B. Zwirn Special Opportunities Fund, L.P. ("Zwirn"), the Supreme Court of the County of New York granted Zwirn's request for the appointment of a receiver to take control of Tama's assets. Pursuant to 47 U.S.C. § 310(d), the receiver then sought approval from the Federal Communications Commission ("FCC" or "Commission") for the involuntary assignment of nine radio broadcast licenses from Tama to the receiver. The Audio Division of the FCC's Media Bureau ("Media Bureau") approved the assignment applications in February 2009. Appellant Glenn Cherry, a shareholder and former chief executive officer of Tama, then filed an application for review with the Commission, challenging the Media Bureau's approval of the assignment applications.  The Commission dismissed the application for review, finding it both procedurally defective and substantively without merit.  *Tama Radio Licenses of Tampa, Fla., Inc.* ("*Tama Radio*"), 25 FCC Rcd. 7588 (June 1, 2010). Cherry now appeals the Commission's decision.

We dismiss Cherry's appeal because he lacks Article III standing.  Cherry alleges that, because of the involuntary assignment of the radio broadcast licenses from Tama to the receiver, he has suffered losses of ownership and voting rights as a Tama shareholder.  However, these injuries cannot be traced to the FCC's approval of the license assignments.  Instead, the alleged injuries were caused by Tama's default on its loan payments, Zwirn's foreclosure action, and the New York court's appointment of a receiver.  This court has no authority to review

these actions. Therefore, even if this court were to overturn the FCC's action, this would not afford Cherry the relief that he seeks. The appointment of a receiver to take control of Tama's assets came as a result of action taken by the New York state court, not the FCC. Accordingly, Cherry's appeal must be dismissed for lack of standing.

## I. BACKGROUND

In 2004, Zwirn, a hedge fund, and Tama, the corporate owner of multiple radio stations in Florida and Georgia, entered into a financing arrangement whereby Zwirn agreed to lend Tama $21 million, and Tama pledged as collateral all of its accounts and assets, including several FCC broadcast licenses. After the deal had been struck, Zwirn, Tama, and Cherry encountered problems and disagreements, which resulted in litigation. *See, e.g.*, *D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broadcasting, Inc.* ("*SDNY Opinion*"), 550 F. Supp. 2d 481 (S.D.N.Y. 2008) (describing some of the legal actions involving Zwirn, Tama, and Cherry). In one of these actions, Zwirn brought a breach of contract suit against Tama in the Supreme Court for the County of New York, seeking judicial foreclosure on the loan collateral. Zwirn alleged that Tama had defaulted on its loan obligation and requested the appointment of a temporary receiver to "preserve and protect the property pending the outcome of the litigation." *SDNY Opinion*, 550 F. Supp. 2d at 492 (citation omitted).

The New York court granted Zwirn's motion for the appointment of a receiver to take control of Tama's assets. *See* Order Pursuant to CPLR § 6401 Appointing a Temporary Receiver ("Receiver Order"), *D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad. Inc.*, No. 600692/2008 (N.Y. Sup. Ct. Sept. 5, 2008), *reprinted in* Joint Appendix ("J.A.") 30-36. Under the terms of the court's order, the receiver took immediate control over Tama's bank accounts and contracts and assumed all ownership authority over the pledged collateral. *Id.*

at 2-4, J.A. 31-33. Pursuant to 47 U.S.C. § 310(d), which states that "[n]o . . . station license, or any rights thereunder, shall be transferred, assigned, or disposed of in any manner, voluntarily or involuntarily, directly or indirectly, or by transfer of control of any corporation holding such permit or license, to any person except upon application to the Commission," the receiver promptly filed applications with the FCC's Media Bureau seeking approval of the involuntary assignments of Tama's radio licenses. *See* Form 316 Application for Involuntary Assignment of Tama Radio Licenses of Jacksonville, FL, Inc., Oct. 2, 2008, *reprinted in* J.A. 38-53; Form 316 Application for Involuntary Assignment of Tama Radio Licenses of Savannah, GA, Inc., Oct. 2, 2008, *reprinted in* J.A. 54-68; Form 316 Application for Involuntary Assignment of Tama Radio Licenses of Tampa, FL, Inc., Oct. 2, 2008, *reprinted in* J.A. 69-84 (collectively "Form 316 Applications").

Cherry filed a timely objection to the receiver's Form 316 Applications. He contended that Zwirn had violated section 310(d) by prematurely taking control of the Tama stations, and that the Form 316 Applications were simply Zwirn's attempt to "cover up" these violations. Glenn Cherry Objection to 316 Filing of Tama Broadcasting, Inc., Oct. 17, 2008, at 2, *reprinted in* J.A. 86. After reviewing the parties' submissions, the Media Bureau approved the Form 316 Applications. In rejecting Cherry's objections, the Media Bureau stated:

> [It] is well-established that the Commission will accommodate court decrees, such as the instant appointment of the Receiver for the [Tama] Stations, unless a public interest determination compels a different result. . . . Cherry has not raised a substantial and material question of fact warranting further inquiry . . . [or] demonstrate[d] that grant of the Assignment Applications would be inconsistent with the public interest.

*Letter to Percy Squire, Esq.*, 24 FCC Rcd. 2453, 2455 (Feb. 26, 2009) (footnote omitted).

Cherry then filed an application for review under 47 C.F.R. § 1.115, requesting the FCC to stay the approval of the license transfers until the pending litigation involving Zwirn and Tama had been fully settled. Application for Review (Mar. 24, 2009), *reprinted in* J.A. 127-29. On June 1, 2010, the Commission dismissed Cherry's application for review, finding it both procedurally defective and substantively without merit. *Tama Radio*, 25 FCC Rcd. at 7588. The Commission's order explained that Cherry had failed to "specify with particularity the grounds warranting Commission review," as required by section 1.115, and that, as a result, "the application for review is subject to dismissal." *Id.* at 7589. The Commission also held that, on a substantive review of the entire record, "the [Media Bureau's] staff properly decided the matters raised below." *Id.* Cherry now appeals the Commission's order.

## II. ANALYSIS

In order to pursue a cause of action in federal court, a party must have Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To establish standing under Article III, a party like Cherry must demonstrate an injury in fact that is fairly traceable to the challenged agency action, and he must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" from this court. *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 937 (D.C. Cir. 2004) (citation and internal quotation marks omitted). Article III standing is a jurisdictional requirement that cannot be waived by the parties. *Doe by Fein v. Dist. of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996) (per curiam). Cherry, as the party pursuing this action, bears the burden of establishing standing. *Lujan*, 504 U.S. at 561. He has failed to do so here.

In *American Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 n.14 (D.C. Cir. 1984), this court held that "[n]o shareholder – not even a sole shareholder – has standing in the usual case to bring suit in his individual capacity on a claim that belongs to the corporation." In *Whelan v. Abell*, 953 F.2d 663, 671-72 (D.C. Cir. 1992), however, we acknowledged that shareholder issues of the sort raised in *Regan* may not always implicate Article III standing. Rather, according to *Whelan*, disputes regarding shareholder claims often involve "real party in interest" inquiries under Rule 17(a) of the Federal Rules of Civil Procedure, and turn on "considerations and conventions of corporate law." *Id*. at 672. We need not ponder the applicability of Rule 17(a) here, because it is clear that Cherry lacks Article III standing quite apart from the considerations raised in *Whelan*. *See Bhd. of Locomotive Eng'rs and Trainmen v. STB*, 457 F.3d 24, 27 (D.C. Cir. 2006) (passing over the agency's prudential standing argument where the petitioner lacked Article III standing).

Even if we accept Cherry's contention that he suffered an injury-in-fact as a result of his losses of "ownership and voting interests" in the Tama stations, Appellant's Br. at 18, he has still failed to satisfy the causation and redressability prongs of Article III standing. Cherry alleges that the FCC's actions "caused a concrete economic injury," because "[h]ad the FCC not granted the Assignment Applications, the Receiver could not have exercised control over the Radio Stations." *Id.* at 18-19. This argument is superficially appealing, but inaccurate. In fact, Cherry's losses of ownership and voting interests in the Tama stations came as a result of Tama's default on its loan obligations, Zwirn's foreclosure action, and the New York court's appointment of a receiver.

This court's decision in *Microwave Acquisition Corp. v. FCC*, 145 F.3d 1410 (D.C. Cir. 1998), is instructive. In that case, the FCC approved an application from MCI

Communications Corporation ("MCI"), filed pursuant to 47 U.S.C. § 310(d), transferring certain licenses to Southern Pacific Telecommunications Company ("SP"), in connection with MCI's sale of a service provider to SP. Microwave Acquisition Corporation ("MAC") objected, arguing that it had previously contracted to purchase the service provider from MCI and that MCI's subsequent sale and license transfer to SP was a breach of this contract. *Id.* at 1411-12. The FCC denied MAC's application for review of the transfer approval, and MAC sought relief before this court. We held that MAC did not have Article III standing because its alleged loss – the contractual right to acquire the service provider – was attributable "not to any action of the Commission but to MCI's alleged breach of its contract . . . . The transfer proceeding could not have caused the alleged breach which occurred before the transfer application was ever filed and would have continued whatever the Commission's decision." *Id.* at 1412.

In this case, Cherry's alleged injuries are not attributable to the Commission's approval of the license assignments, but rather to the judicial foreclosure action before the New York court and that court's appointment of a temporary receiver to control Tama's assets. Even without FCC approval, control of the Tama stations would remain with the court-appointed receiver. *See* Receiver Order, at 2, J.A. 60 (granting receiver control of Tama's assets, including its stations, bank accounts, and contracts with third parties); *see also Arecibo Radio Corp.*, 101 FCC 2d 545, 548, 550 (Aug. 13, 1985) (acknowledging that "breach of contract questions are matters for the courts to decide under state and local law," and that court-ordered license transfers generally will be honored because "a station's operating authorization must usually accompany its physical assets") (brackets and citation omitted). Where the alleged injuries – here, the losses of ownership and voting interests in the Tama stations – "occurred before, existed at the time of, and continued unchanged after the challenged Commission action,"

they "cannot be fairly traced to the transfer approval." *Microwave*, 145 F.3d at 1412 (citation omitted).

In addition, even if causation were properly established, the relief that this court might give Cherry would not remedy the injuries alleged, because this court has no authority over Zwirn's foreclosure action or the New York court's appointment of a receiver. As we noted in *Microwave*, "[r]edressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the [appellant]." 145 F.3d at 1413 (citation omitted). Cherry posits that reversal of the FCC's approval would restore his property interest in the nine Tama broadcast stations. Appellant's Br. at 19. But, as noted above, even if the FCC declined to approve the assignment applications, the receiver would retain control over Tama's assets and operations pursuant to the order of the New York court. Where "we have no reason to believe that [the appellant] would even reap his desired [relief], he flunks the redressability criterion." *Huddy v. FCC*, 236 F.3d 720, 724 (D.C. Cir. 2001).

Finally, we note that, during oral argument before this court, Cherry's counsel did not dispute that Cherry failed to specify with particularity the grounds warranting Commission review. Nor did counsel dispute that such a failure would require the dismissal of Cherry's appeal on the merits. *See BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1182-84 (D.C. Cir. 2003) (explaining that a court must affirm an agency decision properly dismissing a suit on procedural grounds regardless of the agency's consideration of the substantive merits). We need not address this apparent procedural infirmity, however, because we have found that Cherry lacks Article III standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998) (noting that standing is "a threshold question that must be resolved" before a court may proceed to the merits).

### III. CONCLUSION

The case is hereby dismissed because the appellant lacks Article III standing.