SATELLITE BROADCASTING
COMPANY, INC., Appellant,

v.

FEDERAL COMMUNICATIONS
COMMISSION, Appellee,

Associated Information Services
Corporation, Intervenor.

No. 86–1247.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 13, 1987.

Decided July 7, 1987.

As Amended July 7, 1987.

Paul J. Sinderbrand, with whom Stephen R. Bell, Washington, D.C., was on brief, for appellant.

Roberta L. Cook, Counsel, F.C.C., with whom Jack D. Smith, Gen. Counsel and Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D.C., were on brief, for appellee.

Paul J. Berman, with whom Paul G. Gaston, Washington, D.C., was on brief, for intervenor.

Before SILBERMAN, BUCKLEY and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Satellite Broadcasting Company ("SBC") appeals from a decision of the Federal Communications Commission ("FCC") sustaining a decision of its staff to dismiss as untimely SBC applications to operate microwave radio stations employing channels allocated to the Private Operational-Fixed Microwave Service ("OFS") in Chicago, Illinois and Sacramento, California. In both cases, SBC filed its applications with the FCC in Washington, D.C. during October 1983, shortly before the applicable deadlines. Since a number of competing applications had been received for the Chicago and Sacramento areas, the Commission, pursuant to 47 U.S.C. § 309(i) (1982), conducted lotteries in the spring of 1985 to

rank-order the competing applications. SBC was a winner in both lotteries; its applications were ranked higher than any other applications with which they were mutually exclusive. After the lotteries, the FCC staff examined the winning applications in detail to determine if they could be granted. During this post-lottery examination, the staff determined that the Commission's rules in effect during October 1983 had required OFS applications to be filed in Gettysburg, Pennsylvania, not Washington, D.C. Because SBC's applications did not arrive in Gettysburg prior to the cut-off date,[1] the staff dismissed the applications as untimely filed. The full Commission subsequently sustained the dismissals.

■ SBC appeals on the grounds that the FCC arbitrarily and capriciously interpreted its rules to require filing in Gettysburg. In the alternative, SBC maintains that the FCC failed to provide adequate notice of where applications should be filed and therefore may not penalize an applicant for failing to file in the proper location. We agree that the FCC failed to give clear notice of where to file and on that basis remand the case to the Commission with instructions to reverse the dismissal of SBC's applications.

### I.

In October 1983, when SBC's applications were filed, section 1.227(b)(4) of the Commission's rules, 47 C.F.R. § 1.227(b)(4) (1983), allowed, *inter alia*, competing applications in the private radio services to be consolidated for hearing with prior applications if the competing applications were "tendered for filing" within "60 days after the date of public notice listing the first prior application as having been accepted for filing." Although it has now been amended to require applications to be filed in Gettysburg, *see* 49 Fed.Reg. 30,943

(Aug. 2, 1984), the rule did not, in October 1983, specify the location at which applications in the private radio services, of which OFS is a part, should be "tendered for filing."

Several other sections of the FCC's rules did address that matter but, unfortunately, did so in a baffling and inconsistent fashion. On the one hand, the general filing requirements for private radio services set forth in section 1.912, 47 C.F.R. § 1.912 (1983), directed that all applications, with certain exceptions not relevant here, "be filed with the Commission's offices in Gettysburg, Pennsylvania." 47 C.F.R. § 1.912(e). On the other hand, section 1.972, 47 C.F.R. § 1.972 (1983),[2] which specifically applied to applications, such as SBC's, subject to random selection, stated that "[a]pplications in the services specified above"—of which OFS was one—"shall be tendered, filed, accepted or dismissed ... in accordance with ... the rules and policies established for each respective service." 47 C.F.R. § 1.972(b). As § 1.972 expressly noted, the rules and policies applicable to OFS are set forth in Part 94 of the FCC's rules. Section 94.25(b) of that Part instructed that "[e]very application for a radio station authorization, and all correspondence relating thereto, shall be submitted to the Commission's office at Washington, D.C." 47 C.F.R. § 94.25(b) (1983).

Faced with this conflict between section 94.25 and section 1.912, an applicant might have looked to section 1.901 for guidance. That section provided that: "[i]n the case of any conflict or inconsistency between the rules set forth in the subpart [F of Part 1, governing private radio services applications and proceedings] and the rules for the specific services enumerated in this section, the former shall govern." 47 C.F.R. § 1.901 (1983). If the conflict here is seen

---

1. Although the FCC's Washington office, upon receipt of the misfiled applications, transferred them to Gettysburg, they did not arrive there until after the specified cut-off date had passed.

2. Section 1.972(b) was promulgated after section 1.912(e) and became effective just three months before SBC filed the applications in issue. *See Amendment of § 1.912 of the Com-*

*mission's Rules and Regulations,* 47 Fed.Reg. 9208 (March 4, 1982); *Amendment of the Commission's Rules to Allow the Selection from Among Certain Competing Applications Using Random Selection of Lotteries Instead of Comparative Hearings,* 48 Fed.Reg. 27,182, 27,199 (June 13, 1983) (promulgating section 1.972).

as one between a subpart F of Part 1 and a Part 94 rule, then section 1.901 directs that the general requirements of 1.912 (file in Gettysburg) should control those set forth in section 94.25 (file in Washington). But the requirements of section 94.25 are applicable only because they have been incorporated by section 1.972, which like section 1.912 is also a subpart F rule. It is thus also possible to view the conflict as between two subpart F rules, in which case section 1.901 does not control.

Counsel for SBC reconciled these provisions of the FCC's rules by concluding that sections 1.972 and 94.25(b) (which together require filing in Washington) should control because they dealt specifically with OFS applications, whereas section 1.912 was a general rule applying to all private radio services.[3] Accordingly, counsel filed in Washington, D.C. Over nineteen months later, FCC staff informed SBC that a post lottery examination of its applications had revealed that they had been improperly filed in Washington and consequently had been dismissed. The full Commission upheld the staff decision, explaining that section 1.901 stated that in the event of a conflict the provisions of 1.912 (file in Gettysburg) controlled, since section 94.25 was not a Part 1 (subpart F) rule. The Commission also pointed to a 1981 News Release and a 1982 Order, which announced that OFS applications processing had been transferred to Gettysburg and that all applications should be submitted there, effective July 13, 1981, as further support for the proposition that SBC had fair warning of the FCC's filing requirements.

## II.

Traditional concepts of due process incorporated into administrative law preclude an agency from penalizing a private party for violating a rule without first providing adequate notice of the substance of the rule. *See Gates & Fox Co., Inc. v. OSHRC,* 790 F.2d 154, 156 (D.C.Cir.1986). The dismissal of an application, we have held, is a sufficiently grave sanction to trigger this duty to provide clear notice. *See Maxcell Telecom Plus, Inc. v. FCC,* 815 F.2d 1551, 1560–61 (D.C.Cir.1987); *Salzer v. FCC,* 778 F.2d 869, 875 (D.C.Cir. 1985). As we said in *Salzer,* "the FCC cannot reasonably expect applications to be letter-perfect when, as here, its instructions for those applications are incomplete, ambiguous or improperly promulgated." *Id.* "The *quid pro quo* for stringent acceptability criteria is explicit notice of all application requirements." *Id.*

To be sure we normally defer to an agency's reasonable interpretation of its own rules. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1965). And we assume, arguendo, that the FCC's interpretation here is a reasonable one. But as counsel for the FCC conceded at oral argument—as we thought she must—if the Commission had interpreted its rules as did petitioner we similarly would have been obliged to defer to that interpretation because it, at minimum, is also reasonable.[4] There is the rub. The

**3.** SBC counsel was also apparently influenced by the pendency of a proposal to amend section 94.25 to provide for filing of OFS applications in Gettysburg, thereby suggesting that the current rules did not so provide. *See Amendment of Parts 1, 90 and 94 of the Commission's Rules to Eliminate Outdated and Unnecessary Rules,* 48 Fed.Reg. 43,355 (Sept. 23, 1983). The rule was not actually amended until the following year. *See Amendment of Parts 1, 90 and 94 of the Commission's Rules to Eliminate Outdated and Unnecessary Rules,* 49 Fed.Reg. 36,373 (Sept. 17, 1984).

**4.** The FCC's argument that other indications that filings should be made in Gettysburg provided SBC sufficient notice is unpersuasive.

The FCC points to a 1981 News Release and a 1982 Order announcing that the Private Radio Bureau's processing operations were being moved to Gettysburg, *see* J.A. at 4, but section 1.972—the principal source of the confusion here—was promulgated sixteen months *after* those announcements, *see Amendment of the Commission's Rules to Allow the Selection from Among Certain Competing Applications Using Random Selection of Lotteries Instead of Comparative Hearings,* 48 Fed.Reg. 27,182 (June 13, 1983), and it was certainly reasonable for SBC to assume that the requirements in section 1.972 took precedence over the earlier statements of FCC intent.

Commission through its regulatory power cannot, in effect, punish a member of the regulated class for reasonably interpreting Commission rules. Otherwise the practice of administrative law would come to resemble "Russian Roulette." The agency's interpretation is entitled to deference, but if it wishes to use that interpretation to cut off a party's right, it must give full notice of its interpretation. We accordingly vacate as arbitrary and capricious the FCC's order dismissing these applications and remand this case for their reinstatement *nunc pro tunc.*[5]

*Reversed and remanded.*

---

[5.] Intervenor Associated Information Services Corp.—but not the FCC—argues that our recent decision in *Reuters Limited v. FCC,* 781 F.2d 946 (D.C.Cir.1986) compels affirmance of the FCC's decision. Although *Reuters* did note in dicta that FCC rules for OFS require filing in Gettysburg, *id.,* at 947, it pointedly did not decide the issue before us today. *Id.* at 950 n. 5. No party in that case claimed that it lacked notice of the timing rules involved there.