102 F.3d 583
 322 U.S.App.D.C. 185, 114 Ed. Law Rep. 1026,
5 Communications Reg. (P&F) 1053
 STATE OF OREGON, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Appellees.
University Foundation, California State University at Chico,
Intervenor.
 No. 96-1059.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 8, 1996.
Decided Dec. 20, 1996.
 
 Appeal of an Order of the Federal Communications Commission.
 Howard M. Liberman, Washington, DC, argued the cause for appellant, with whom Gerald Stevens-Kittner was on the brief.
 Gregory M. Christopher, Counsel, Federal Communications Commission, Washington, DC, argued the cause for appellees, with whom William E. Kennard, General Counsel, and Daniel M. Armstrong, Associate General Counsel, were on the brief. Roberta L. Cook, Counsel, entered an appearance.
 Stanley S. Neustadt and Wayne Coy, Jr., Washington, DC, were on the brief for intervenor University Foundation, California State University at Chico.
 Before: WALD, GINSBURG, and TATEL, Circuit Judges.
 GINSBURG, Circuit Judge:
 
 
 1
 The State of Oregon, acting through the State Board of Higher Education for the benefit of Southern Oregon State College, appeals a decision of the Federal Communications Commission rejecting as untimely its application for a new noncommercial FM license and denying its application for a waiver of the cut-off rules for competing applications. Because the Commission did not provide clear notice of the cut-off date for competing applications, we reverse the order of [322 U.S.App.D.C. 186] the FCC and remand this matter to the Commission.
 
 I. Background
 
 2
 In Ashbacker Radio Corp. v. FCC, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945), the Supreme Court held that the FCC must conduct a comparative hearing whenever there are before it mutually exclusive applications for a broadcast license. The FCC has promulgated various regulations governing the processing of such applications and establishing certain filing deadlines. "The purpose of these rules is to attract all competitive applications for a particular [license] within a fixed and reasonably short time frame, allowing the Commission to satisfy its Ashbacker obligations with a single, fairly prompt comparative hearing." McElroy Electronics Corp. v. FCC, 86 F.3d 248, 253 (D.C.Cir.1996).
 
 
 3
 The licensing process for a new noncommercial FM station begins when the Commission receives the first application therefor. If the Commission accepts an application for filing, then the agency must issue a public notice (known as the "A" cut-off list) naming the applicant(s) accepted for filing and announcing a date not less than 30 days after the publication of the notice by which all mutually exclusive applications and petitions seeking to deny the listed application(s) must be filed. 47 C.F.R. § 73.3573(e). Any competing applications filed before the "A" list cut-off date are noted in a "B" cut-off list. The "B" cut-off list contains the deadline for the filing of all petitions to deny "B" list application(s). Id. When the "B" cut-off deadline has passed, the "A" and "B" list applications are set down for a single comparative hearing.
 
 
 4
 In this case, the process got underway in June 1988 when the University Foundation, California State University at Chico submitted to the FCC an application for a noncommercial FM radio station in Redding, California. On November 29, 1989 the FCC sent the Foundation a letter indicating that its application was deficient because it lacked certain engineering information. The letter stated: "Further action on the subject application will be withheld for a period of 30 days from the date of this letter to give you an opportunity to cure these deficiencies." The Commission duly sent Oregon a copy of this letter. On December 6, 1989 the FCC released an "A" cut-off list setting January 10, 1990 as the cut-off date for applications competing with that of the Foundation. On December 28, 1989 the Foundation submitted the engineering information the FCC had requested in its letter of November 29. On the same day, the Commission released another "A" cut-off list setting February 1, 1990 as the deadline for applications competing with that of the Foundation.
 
 
 5
 On January 2, 1990 the Foundation sent a letter to the FCC asking that its application be deleted from the cut-off list issued on December 28, 1989. The Foundation did not send a copy of this letter to Oregon, in apparent violation of the Commission's regulations governing ex parte communications. See 47 C.F.R. §§ 1.1202(b); 1.1208(a). On January 12 the Commission issued an erratum stating that the Foundation's application "was listed inadvertently on [the "A" list], released December 28, 1989 and is hereby deleted."
 
 
 6
 Although it was aware of the January 10 cut-off date in the "A" list published on December 6, Oregon did not file its own application for the Redding station until January 29, 1990. The State asserts that it believed the Commission had published the December 6 list in error because only one week earlier, in the November 29 deficiency letter to the Foundation, the agency had indicated that it would not act upon the Foundation's application for 30 days. Nonetheless, Oregon claims, after the February 1 cut-off date was published it made diligent efforts to determine which cut-off date was valid. The State continued to monitor Commission notices; consulted the Commission's Facility/Application Information Report, which indicated that the February 1 deadline applied; attempted to contact Commission staff directly but was unsuccessful because of the holiday season; and received assurances from the FCC staff indirectly, via Senator Packwood's office, that the Commission would accept applications until February 1.
 
 
 7
 [322 U.S.App.D.C. 187] On January 15, 1990 Oregon sent a letter to the Secretary of the Commission expressing its concern that by issuing the erratum of January 12 deleting the Foundation's application from the December 28 "A" list, the agency intended to adhere to January 10 as the cut-off date. The State explained that it was in the process of preparing a competing application to be filed on or before February 1, which it believed to be the applicable cut-off date.
 
 
 8
 Oregon went on to submit its application on January 29, together with a request for a waiver. On June 21 the Chief of the Audio Services Division, Mass Media Bureau, rejected the State's request for a waiver and returned the application as untimely filed. Oregon then filed an Application for Review by the Commission, in which it argued that the staff exercising delegated authority had acted arbitrarily and capriciously in denying its application as untimely.
 
 
 9
 The Commission denied review, noting that Oregon had "actual knowledge" that the Foundation's application was pending before the agency yet "for reasons known only to Oregon" did not submit its own application until after the Foundation's application was accepted for filing. The Commission rejected the State's argument that it had reasonably relied upon the FAIR Report, that it had reasonably believed the November 29 deficiency letter precluded the Commission from placing the Foundation's application upon an "A" list in less than 30 days, and that it could have filed its application by January 10 if only it had been served with a copy of the Foundation's January 2 letter to the Commission, as required by the agency's rules for ex parte communications. The FCC opined that this case was analogous to Florida Institute of Technology v. FCC, 952 F.2d 549 (D.C.Cir.1992), in which we held that the FCC had provided adequate notice even though it had issued two inconsistent "A" lists.
 
 
 10
 The Commission also denied the State's request for a waiver. The Commission held that this case did not present "extraordinary circumstances" and that the State had not exercised reasonable diligence or demonstrated that its delay in filing was due to a circumstance beyond its control. The Commission subsequently denied the State's motion for reconsideration (over a single dissenting vote), adding that Oregon should not have been confused about the true cut-off date because, under the FCC's regulations, "the December 28 cut-off notice was without legal effect," and "[i]t is a well-settled rule that an agency's failure to follow its own regulations is fatal to the deviant action," quoting Florida Institute, 952 F.2d at 553. Oregon then appealed to this court.
 
 II. Analysis
 
 11
 Oregon makes two arguments on appeal. The first is that, because the Commission failed to provide adequate notice of the cut-off date, it was arbitrary and capricious to deny the State's application as untimely filed. The second is that it was arbitrary and capricious for the FCC to deny the State's application for a waiver of the cut-off rule. Because we conclude that the Commission's rejection of Oregon's application as untimely was arbitrary and capricious, we will not address whether the FCC should have granted the petitioner's waiver request.
 
 
 12
 The FCC enforces its cut-off rules strictly in order to provide a prompt comparative hearing and to ensure that applicants are treated fairly and consistently. Id at 550. We have approved the FCC's policy of strict enforcement but only "so long as 'the quid pro quo ... is explicit notice of all applicability requirements.' " Id. (quoting Salzer v. FCC, 778 F.2d 869, 875 (D.C.Cir.1985)). As we have explained before, "The dismissal of an application is a sufficiently grave sanction to trigger [the] duty to provide clear notice." Satellite Broadcasting Co. v. FCC, 824 F.2d 1, 3 (D.C.Cir.1987). Accordingly, we have held that the FCC acts arbitrarily and capriciously "when it reject[s] an application as untimely based on an ambiguous cut-off provision, not clarified by FCC interpretations, if the applicant made a reasonable effort to comply." Florida Institute, 952 F.2d at 550.
 
 
 13
 Oregon argues that the FCC acted arbitrarily and capriciously in rejecting its application because the agency failed to give [322 U.S.App.D.C. 188] prospective applicants for the Redding station clear notice of the cut-off date for competing applications. Oregon claims that it reasonably believed that the second "A" list was correct because the Commission's letter of November 29 had indicated that the agency would take no action on the Foundation's application for 30 days; the FAIR Report stated that the cut-off date was indeed February 1; and the second "A" list was issued before the first-announced cut-off date--all of which suggests that the Commission was covering an invalid premature notice with a valid one.
 
 
 14
 The Commission, relying upon our subsequent decision in Florida Institute, responds that the duplicative cut-off list could not have created any ambiguity. The Commission contends that because the first "A" list was never retracted, the second "A" list could have no legal effect and therefore could not have misled Oregon.
 
 
 15
 The Commission's reliance upon Florida Institute is misplaced. In that case one applicant filed its application after the FCC had issued an "A" list and before the cut-off date for mutually exclusive applications. Under the applicable regulations, the Commission should then have issued a "B" list including this second application and a cut-off date for petitions to deny, but it failed to do so. Two years after it had issued the first "A" list, the Commission mistakenly issued a new "A" list containing the second application and announcing a new cut-off date. The Florida Institute of Technology filed its own mutually exclusive application before the cut-off date, but the FCC rejected the application as untimely. The Institute argued that its application was timely because the second "A" list supplanted the first with a new cut-off date, thereby beginning the filing process anew. We rejected this argument, saying: "The new 'A' cut-off date could not supplant the earlier one because the September 1986 notice was without legal effect: '[i]t is a well-settled rule that an agency's failure to follow its own regulations is fatal to the deviant action.' " Id. at 553 (quoting Way of Life Television Network, Inc. v. FCC, 593 F.2d 1356, 1359 (D.C.Cir.1979)).
 
 
 16
 The facts here are significantly different. In Florida Institute, the second "A" list was published not before but long after the original cut-off date. The Institute did not and could not argue that the FCC failed to give clear and adequate notice of the filing deadline; indeed, the Institute could have determined that the second "A" list was issued in error simply by examining the public record. The Institute's primary argument on appeal was instead that the second "A" list created a new window period for the filing of mutually exclusive applications. We rejected this attempt by the Institute to turn a clerical error into a windfall of "rights it would not otherwise enjoy." Id.
 
 
 17
 Here, in contrast, Oregon argues that the Commission failed to give clear notice of the deadline: First the FCC said the cut-off date was January 10; then, well before that date, it said the deadline was February 1. Unlike the petitioner in Florida Institute, Oregon was faced with overlapping filing periods, and therefore never had one complete filing period during which the deadline was clear. Although an FCC regulation provides that an application should be placed on only one "A" list, it was quite possible, and certainly within the Commission's power to declare, that it had issued the first "A" list in error. Oregon's confusion was therefore understandable; not only had the second "A" list been issued well before the original filing deadline, but the FAIR reports indicated that the second "A" list was applicable, and--although the Foundation, unbeknowst to Oregon, had brought the error to the FCC's attention in its letter of January 2--the agency did not move to correct its error until after the first deadline had passed. Thus, although the FCC originally gave clear notice of the January 10 cut-off, its subsequent actions so muddied the waters that a prospective applicant could not be confident what the cut-off date was. Of course, the State could in these uncertain circumstances have hastened to apply by the original cut-off date, but its failure to do so does not relieve the Commission of its obligation in the first instance to provide the public with clear notice of the cut-off date. And absent clear notice, it was arbitrary and capricious for the agency to reject Oregon's application.[322 U.S.App.D.C. 189] III. Conclusion
 
 
 18
 The FCC acted arbitrarily and capriciously by rejecting Oregon's application as untimely without having provided clear notice of the filing deadline. Therefore, we vacate the Commission's order dismissing Oregon's application and remand this case to the agency for further proceedings consistent with the foregoing opinion.
 
 
 19
 So ordered.