Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

**No. 01-1435**                **September Term, 2002**

Filed On: February 6, 2003

21ST CENTURY TELESIS JOINT VENTURE AND
21ST CENTURY BIDDING CORPORATION,
APPELLANTS

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

SALMON PCS, LLC,
INTERVENOR

————

Appeal of Orders of the
Federal Communications Commission

————

Before: RANDOLPH and ROGERS, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge.*

## O R D E R

It is **ORDERED**, *sua sponte*, that the opinion filed herein on January 31, 2003 is amended as follows:

Page 2, first paragraph of the decision, line 6, replace the words "petitions for review of" with "appeals"

Page 2, first paragraph of the decision, line 17, replace the word "petition" with "appeal"

Page 2, first paragraph of the decision, line 18, replace the words "deny the petition in part" with "affirm the Commission's decision"

Page 2, first paragraph of the decision, line 22, replace the word "petition" with "appeal"

Page 2, first paragraph of the decision, line 28, replace the words "deny the petition in part" with "affirm the Commission's orders"

Page 7, section II.A., line 2, replace the word "petitioner" with "appellant"

Page 9, lines 13–14, replace the words "the court granted its petition" with "it prevailed on appeal."

Page 9, line 38, replace the word "petition" with "appeal"

Page 12, section III, line 2, replace the words "petition for review" with "appeal"

Page 15, first full paragraph, last line, replace the word "Respondent's" with "Appellee's"

Page 15, replace the last paragraph with "Accordingly, because 21st Century lacks standing to challenge the cancellation of its C block licenses, we dismiss that portion of its appeal; because 21st Century's hearing contentions are not properly before the court, as 21st Century failed to exhaust its administrative remedies by timely presenting its hearing arguments to the Commission, and its notice contentions fail in light of record evidence that it had sufficient notice of its payment obligations, we affirm the orders of the Commission."

*Per Curiam*

**FOR THE COURT:**

Mark J. Langer, Clerk

BY:

Deputy Clerk

Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————

No. 01-1435          September Term, 2002

Filed On: January 31, 2003

21ST CENTURY TELESIS JOINT VENTURE AND
21ST CENTURY BIDDING CORPORATION,
APPELLANTS

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

SALMON PCS, LLC,
INTERVENOR

———————

Appeal of Orders of the
Federal Communications Commission

———————

Before: RANDOLPH and ROGERS, *Circuit Judges,* and
WILLIAMS, *Senior Circuit Judge.*

## O R D E R

It is **ORDERED**, *sua sponte*, that the opinion filed herein on January 31, 2003 is amended by adding a new sentence on page 10, line 5, after the word "Act" as follows:

"21st Century points to *FCC v. NextWave Pers. Communications Inc.*, 2003 WL 166615 (U.S.), as supporting its claim

that the automatic cancellation of its licenses was effectively a revocation requiring a hearing under § 312, but we do not reach the merits of 21st Century's argument because its hearing contentions are time-barred."

*Per Curiam*

**FOR THE COURT:**

Mark J. Langer, Clerk

BY:

Deputy Clerk

Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 5, 2002        Decided January 31, 2003

No. 01-1435

21ST CENTURY TELESIS JOINT VENTURE AND
21ST CENTURY BIDDING CORPORATION,
APPELLANTS

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

SALMON PCS, LLC,
INTERVENOR

Appeal of Orders of the
Federal Communications Commission

*Russell D. Lukas* argued the cause for appellants. With him on the briefs was *George L. Lyon, Jr.* *Thomas Gutierrez* entered an appearance.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Stanley R. Scheiner*, Counsel, Federal Communications Commission, argued the cause for appellee. With him on the brief were *John A. Rogovin*, Deputy General Counsel, and *Daniel M. Armstrong*, Associate General Counsel.

Before: RANDOLPH and ROGERS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

Opinion concurring in part and dissenting in part filed by *Senior Circuit Judge* WILLIAMS.

ROGERS, *Circuit Judge*: The Federal Communications Commission canceled nineteen broadband licenses held by 21st Century Telesis Joint Venture and 21st Century Bidding Corporation (collectively "21st Century") following 21st Century's failure to make timely installment payments on its licenses. 21st Century appeals Commission orders determining that 21st Century was provided adequate notice before cancellation of its licenses, and declining to consider 21st Century's late filed arguments that the automatic cancellation rule exceeds the Commission's statutory authority and as applied violates due process. *In re Request for Extension of Installment Payment Due Date*, 15 F.C.C.R. 14,814 (2000) ("*Division Order*"), *reconsideration denied, In re Licenses of 21st Century*, 15 F.C.C.R. 25,113 (2000) ("*Reconsideration Order*"), *further reconsideration denied, In re Licenses of 21st Century*, 16 F.C.C.R. 17,257 (2001) ("*Second Reconsideration Order*"). We dismiss the appeal in part and affirm the Commission's deceison. Because 21st Century's challenges to the automatic cancellation of its C block licenses are either moot or unripe, 21st Century lacks standing to bring those challenges, and we dismiss that part of the appeal. Because 21st Century fails to show with respect to its F block licenses either that the Commission abused its discretion under 47 U.S.C. § 405 and 47 C.F.R. § 1.106(f) by declining to consider late filed hearing arguments, thus making it improper for the court to address those contentions, or that the Commission failed to provide sufficient notice of 21st Century's payment obligations, we affirm the Commission's orders.

**I.**

The Communications Act of 1934 ("Act"), as amended in 1993, authorizes the Commission to award radio licenses "through a system of competitive bidding." 47 U.S.C. § 309(j)(1). In designing such a system, Congress directed the Commission to "promot[e] economic opportunity ... by disseminating licenses among a wide variety of applicants, including small businesses." *Id.* § 309(j)(3)(B). Consistent with this goal, Congress further directed the Commission to "consider alternative payment schedules and methods of calculation, including lump sums or guaranteed installment payments." *Id.* § 309(j)(4)(A). Pursuant to this mandate, the Commission reserved two blocks of licenses, the "C" and "F" blocks, for bidding by small businesses, as defined in terms of annual gross revenues and total assets. *In re Implementation of Section 309(j) of the Communications Act*, 9 F.C.C.R. 5532 ¶ ¶ 12, 115 (1994). Noting that the "primary impediment to participation" in license auctions by small businesses is "lack of access to capital," *id.* at ¶ ¶ 10, 135, the Commission adopted an installment payment plan to allow successful bidders in the C and F blocks to "pay their winning bid over time." *Id.* at ¶ ¶ 16, 136–38. In announcing these measures, the Commission stated that "[t]imely payment of all installments will be a condition of the license grant and failure to make such timely payment will be grounds for revocation of the license." *Id.* at ¶ 138.

In May 1996 and January 1997, 21st Century was a successful bidder, ultimately obtaining thirteen C block licenses and six F block licenses. Each license stated on its face that it was "conditioned upon the full and timely payment of all monies due [under the Commission's installment plan]" and that "[f]ailure to comply with this condition will result in automatic cancellation of this authorization." Under the Commission's installment plan C block licensees were required to pay 90% of their net bid price over ten years, with interest only paid for the first six years and interest and principal paid for the remaining four, 47 C.F.R. § 24.711(b)(3) (1996), and F block licensees were required to pay 80% of their net bid price over ten years, with interest only paid for

the first two years and interest and principal paid for the remaining eight. 47 C.F.R. § 24.716(b)(3) (1996).

After receiving numerous requests for relief from financially troubled licensees, the Commission, on March 31, 1997, suspended installment payment obligations for C block licensees, and on April 28, 1997, extended the suspension to F block licensees. *In re Amendment of the Comm'n's Rules Regarding Installment Payment Financing for PCS Licensees, Second Report and Order and Further Notice of Proposed Rule Making*, 12 F.C.C.R. 16,436 ¶¶ 6, 14 (1997) ("*Restructuring Order*"). The suspensions ended on September 25, 1997, when the Commission adopted three new payment methods "designed to assist C block licensees experiencing financial difficulties." *Id.* at ¶¶ 1, 31–69. The Commission gave licensees until June 8, 1998 to choose one of the three restructuring schemes, and until July 31, 1998 to resume installment payments. *Public Notice, Wireless Telecommunications Bureau Announces June 8, 1998 Election Date for Broadband PCS C Block Licensees*, 13 F.C.C.R. 7413 (1998). Among the restructuring options, 21st Century chose disaggregation, which required it to return half of its 30 MHz of spectrum to the Commission in return for forgiveness of the outstanding debt associated with the returned 15 MHz, *Restructuring Order*, 12 F.C.C.R. 16,436 ¶¶ 39–40, and the Commission sent 21st Century a *Note Modification* dated July 15, 1998, setting the dates for future installment payments as "October 31, January 31, April 30, and July 31 of each year."

Several months before licensees were to resume payment, the Commission adopted rules regarding untimely payments. 47 C.F.R. § 1.2110(f) (1999). Under the new regulations, licensees have an automatic 90–day "non-delinquency" period after the installment payment due date, during which time payment can be made with a five percent late fee. *Id.* at § 1.2110(f)(4)(I). If the licensee fails to remit the missed installment during this first grace period, the rule provides for a second automatic 90–day period in which the licensee can remit payment with an additional late fee of ten percent. *Id.* at § 1.2110(f)(4)(ii). Failure to submit an installment by

the last day of the second 90–day period results in automatic cancellation of the license without further action by the Commission. *Id.* at § 1.2110(f)(4)(iii).

21st Century made timely installment payments through April 30, 1999. On July 20, 1999, 21st Century received a payment notice from the Commission reminding it of the July 31, 1999 payment deadline. 21st Century missed this deadline, and in accordance with 47 C.F.R. § 1.2110(f)(4)(I), received a ninety-day extension. On October 19, 1999, 21st Century received a notice from the Commission reminding it to make its October 31 payment and its July 31 payment with the requisite late fee. 21st Century again failed to make its July 31 payment, and in accordance with 47 C.F.R. § 1.2110(f)(4)(ii), received a second ninety-day extension, making the final deadline for payment January 27, 2000. When 21st Century did not submit its July 31, 1999 payment by January 27, 2000, its licenses were automatically cancelled.

Thereafter, beginning on February 2, 2000, 21st Century sought an extension of the payment deadline or a waiver of the automatic cancellation rule. In the first of three letters, James LaBelle, 21st Century's Chief Executive Officer, explained that 21st Century was "unable to ensure that wire transfers would be received [by the Commission by] January 27, 2000," but that as of February 2, 2000, such funds were available to be sent upon assurance from the Commission that the licenses had not been canceled; the letter also stated that some of the payment notices from the Commission had not been received or had been received late. *See Letter from James A. LaBelle to Magalie Roman Salas* (Feb. 2, 2000). The second letter did not mention the payment notices, but reiterated that 21st Century had the funds to cover the payment if the Commission could assure it that its licenses had not been canceled. *See Letter from James A. LaBelle to Magalie Roman Salas* (Apr. 25, 2000). The third letter stated both that the Commission had not met its responsibility of sending payment notices to 21st Century, and that 21st Century had sufficient funds to make payment. *See Letter from James A. LaBelle to Magalie Roman Salas* (July 25, 2000). On August 7, 2000, the Commission's Auction and

Industry Analysis Division ("Division") denied 21st Century's request for an extension of the January 27, 2000 late payment deadline and its request for waiver of the Commission's automatic cancellation rule, stating that "21st Century was aware of the deadline for submission of the installment payment and had ample time to secure financing." *Division Order*, 15 F.C.C.R. 14,814 (referred to by 21st Century as "Division Letter Ruling"). The Division referenced notice of the applicable deadlines from the Commission's rules, the face of the licenses, and the installment payment plan notes 21st Century executed. *Id.*

Pursuant to 47 C.F.R. § 1.106(f), providing thirty days from the denial of its requests to submit a "petition for reconsideration and any supplement," 21st Century timely filed, on September 6, 2000, a petition for reconsideration of the *Division Order*, arguing that 21st Century had not received clear notice from the Commission with respect to its payments and that the Division did not give the waiver request a "hard look." After the thirty-day period had expired, 21st Century filed, on November 9, 2000, a motion for leave to file a supplement to its petition for reconsideration and a Supplement to the Petition, which argued that the Commission's automatic cancellation rule violates due process and that 21st Century had a statutory right to a pre-cancellation hearing. The Commission denied 21st Century's petition for reconsideration on December 21, 2000, finding that 21st Century had ample notice of the payment deadline and that a waiver would not be in the public interest; the Commission declined to address 21st Century's hearing arguments because they had not been timely filed. *Reconsideration Order*, 15 F.C.C.R. 25,113 n.4. The Commission also denied 21st Century's second petition for reconsideration on the grounds that 21st Century's requests for an extension of time or waiver were filed after the payment deadline, that 21st Century had failed to raise any new facts as required for reconsideration, and that the Commission was not required under 47 C.F.R. § 1.106(f) to accept the untimely filed due process claim because 21st Century provided no explanation

for its absence from the initial petition. *Second Reconsideration Order*, 16 F.C.C.R. 17,257 ¶ ¶ 11–24.

## II.

Before turning to the merits of 21st Century's challenges to the Commission orders, the court must address two threshold issues. The Commission contends, first, that 21st Century has neither Article III standing to contest the cancellation of its C block licenses nor prudential standing to raise its due process and hearing contentions before the court. Second, even if 21st Century has standing, the Commission contends that 21st Century's due process and hearing contentions are time barred and thus unreviewable. Unlike our dissenting colleague, neither we nor the parties find an exception in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), to the requirement that the court must initially determine whether a party has standing to bring each of its contentions before the court. In *Steel Co.* the Supreme Court rejected "the doctrine of hypothetical jurisdiction," *id.* at 94, and in distinguishing cases of "extraordinary procedural postures," *id.* at 98, the Court does not suggest that the exception identified by the dissent applies where party A is challenging agency actions on several grounds, as distinct from circumstances where resolution of the appeal of party B in separate litigation has the effect of resolving a merits question raised by party A "with the consequence that the jurisdictional question could have no effect on the outcome." *Id.* at 98.

## A.

The "irreducible constitutional minimum" for Article III standing is that the appellant was injured in fact, that its injury was caused by the challenged conduct, and that the injury would likely be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Microwave Acquisition Corp. v. FCC*, 145 F.3d 1410, 1412 (D.C. Cir. 1998). The Commission contends that 21st Century lacks Article III standing with regard to its C block

licenses because it no longer seeks reinstatement of those licenses and, therefore, has no redressable injury. 21st Century responds that it has Article III standing both because it had standing on the day it filed its notice of appeal, and because it remains subject to FCC "debt collection procedures," as well as higher bidding requirements in future auctions, which could be redressed by a decision in its favor. We conclude that the court does not have jurisdiction to review 21st Century's challenge to the cancellation of its C block licenses.

Article III, section 2 of the Constitution limits federal courts to deciding "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). Although standing is determined "at the time [an] action commences," *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.* 528 U.S. 167, 191 (2000); *Advanced Mgmt. Tech., Inc. v. FAA*, 211 F.3d 633, 636 (D.C. Cir. 2000); *U.S. Airwaves, Inc. v. FCC*, 232 F.3d 227, 232 (D.C. Cir. 2000) (citing *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957)), the court is not relieved from evaluating mootness "through all stages" of the litigation in order to ensure there remains a live controversy. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990); *see also Laidlaw*, 528 U.S. at 189. Thus, "[e]ven where litigation poses a live controversy when filed, the doctrine [of mootness] requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (citation omitted); *see also Am. Family Life Assurance Co. v. FCC*, 129 F.3d 625, 628 (D.C. Cir. 1997).

When 21st Century filed its appeal to the court, it had suffered a financial injury-in-fact from the loss of its C block licenses; that injury resulted from the Commission's automatic cancellation of its licenses; and it was seeking reinstatement of its C block licenses. 21st Century's subsequent decision not to seek reinstatement of its C block licenses, however, rendered moot its claim of financial injury resulting from the loss of those licenses by eliminating any possibility

that a decision of the court could redress that injury. Further, contrary to 21st Century's position, its standing cannot be based on the fact that it remains subject to the Commission's debt collection procedures and higher bidding requirements in future auctions. First, regarding debt collection, because 21st Century defaulted in making timely payments for its licenses, it is required, under 47 C.F.R. §§ 1.2104(g)(2), 1.2109, to pay the difference between the amount of its outstanding debt and the reauction price of its licenses, as well as a penalty of three percent of the reauction price. *See also Mountain Solutions, Ltd. v. FCC*, 197 F.3d 512, 522–23 (D.C. Cir. 1999). However, 21st Century would remain subject to such debt collection even if it prevailed on appeal. By choosing not to seek reinstatement of its C block licenses, 21st Century is effectively giving up the licenses, which subjects it to the same penalties under § 1.2104(g)(2) for defaulting. Second, regarding future bidding, the matter is unripe. While the Commission's rules require previous defaulters to pay 1.5 times more on future winning auction bids than non-defaulters, *see In re Amendment of Part 1 of the Comm'ns Rules*, 15 F.C.C.R. 15,293 ¶ 42 (2000), 21st Century has provided no evidence that it intends to participate in future auctions. The Supreme Court has instructed that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted). Without any indication from 21st Century that its participation in a Commission auction is "certainly impending," *Wyoming Outdoor Council v. United States Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999) (citation omitted), its challenge to the cancellation of its C block licenses by reason of future bidding requirements is unripe for review.

Accordingly, because "Congress' decision to grant a particular plaintiff the right to challenge an Act's constitutionality . . . eliminates any prudential standing limitations. . . ." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997), we dismiss the appeal with regard to the challenges to the C block licenses cancellation.

**B**.

The second threshold question is whether the court can properly consider 21st Century's contentions that the Commission's automatic cancellation rule violates due process and that it was entitled to a pre-cancellation hearing under § 312(c) of the Act. 21st Century points to *FCC v. NextWave Pers. Communications Inc.*, 2003 WL 166615 (U.S.), as supporting its claim that the automatic cancellation of its licenses was effectively a revocation requiring a hearing under § 312, but we do not reach the merits of 21st Century's argument because its hearing contentions are time-barred. Section 405(a) of the Act provides that "[a] petition for reconsideration must be filed within thirty days from the date upon which public notice is given of the order." 47 U.S.C. § 405(a). Section 1.106(f) of the Commission's rules further states that "[n]o supplement or addition to a petition for reconsideration . . ., filed after expiration of the 30 day period, will be considered except upon leave granted upon a separate pleading for leave to file, which shall state the grounds therefor." 47 C.F.R. § 1.106(f). Although § 405 does not prohibit the Commission's consideration of late filed petitions, and the language of its rule affords discretion to the Commission to review late-filed claims, *Second Reconsideration Order,* we find no abuse of discretion by the Commission in declining to address 21st Century's hearing and due process arguments. Consequently, these contentions are not properly before the court.

21st Century filed its hearing arguments on November 9, 2000, more than thirty days after the *Division Order* of August 7, 2000. It never stated any grounds for its failure to meet the filing deadline. Thus, 21st Century failed both to meet the filing deadline and to provide an explanation of why the arguments in its Supplement to the Petition were not part of its initial petition for reconsideration. The Commission explained that 21st Century's failure to raise its hearing arguments in either its letters or its initial petition "thwarts procedures designed to bring a prompt and final resolution to matters." 16 F.C.C.R. 17257 ¶ 18.

The court has discouraged the Commission from accepting late petitions in the absence of extremely unusual circum-

stances. *Virgin Islands Tel. Corp. v. FCC,* 989 F.2d 1231, 1237 (D.C. Cir. 1993); *Reuters Ltd. v. FCC*, 781 F.2d 946, 951–52 (D.C. Cir. 1986); *cf. Gardner v. FCC*, 530 F.2d 1086, 1091–92 & n.24 (D.C. Cir. 1976). In *Virgin Islands*, for example, the court found no abuse of discretion when the Commission declined to entertain a late-filed petition in the absence of extenuating circumstances prohibiting a timely filing. 989 F.2d at 1237; *cf. Reuters*, 781 F.2d at 952. Similarly here, the Commission could properly conclude that it was "not inclined to exercise [its] discretion to hear late-filed supplements when [the] petitioner offers no plausible explanation as to why supplemental arguments were not made in an initial petition." *Second Reconsideration Order*, 16 F.C.C.R. 17,257 ¶ 18. 21st Century's position that the Commission was required to review its late-filed due process claim because it raises a constitutional issue is without merit. While 21st Century focuses on the court's statement that "agencies do have 'an obligation to address properly present-ed constitutional claims which . . . do not challenge agency actions mandated by Congress,'" *McBryde v. Comm. to Rev. Circuit Council Conduct*, 264 F.3d 52, 62 (D.C. Cir. 2001) (quoting *Graceba Total Communications, Inc. v. FCC*, 115 F.3d 1038, 1042 (D.C. Cir. 1997)), it ignores the fact that 21st Century's hearing arguments were not properly presented, and hence the Commission was under no obligation to review them.

Nonetheless, 21st Century maintains that the court can review its hearing arguments on the merits even though the Commission declined to do so. Responding to the Commission's reliance on *Virgin Islands* for the proposition that "issues must be raised before the Commission as a prerequisite to our review," 989 F.2d at 1237 (citation omitted), 21st Century relies on *Time Warner Entm't Co. v. FCC*, 144 F.3d 75 (D.C. Cir. 1998), in support of its view that its hearing arguments were flagged such that "a reasonable Commission *necessarily* would have seen the question . . . as part of the case presented to it," *id.* at 81, and thus the court can review its hearing contentions. However, the requirement that ar-guments be "raised before the Commission" is not satisfied by an untimely supplement filed without excuse such that the

Commission could properly deny leave to file. *See Virgin Islands,* 989 F.2d at 1237. 21st Century's reliance on *AT&T Co. v. FCC*, 974 F.2d 1351 (D.C. Cir. 1992), is to no avail as nothing in that case indicates that there was a late filing or other procedural default. *Id.* at 1354. 21st Century's hearing arguments were not properly raised before the Commission because they were untimely filed. By failing to comply with the Commission's procedural requirements, 21st Century thus failed to exhaust its administrative remedy. As the court held in *Northwestern Indiana Tel. Co., Inc. v. FCC*, 872 F.2d 465, 470–71 (D.C. Cir. 1989), *cert. denied*, 493 U.S. 1035 (1990), a case in which constitutional claims were at issue:

> Petitioners contend, however, that section 405's exhaustion requirement has been met by virtue of the [Commission's] having enjoyed an "opportunity" . . . to address these claims. As we just noted, however, exhaustion principles normally require compliance with the agency's procedural rules . . . . The relevant inquiry is thus whether, in light of petitioners' initial failure to raise constitutional and statutory issues, the Commission erred in not addressing these arguments . . . . We think not.

Consequently, 21st Century is procedurally barred under § 405 of the Act and § 1.106(f) of the Commission's rules from presenting its hearing contentions to the court.

### III.

Turning to the remaining merits contentions in 21st Century's appeal, 21st Century challenges the Commission's orders on the ground the Commission failed to provide it with notice of its payment obligations before canceling its licenses, as required by the Commission's rules. The court need not decide if the Commission's rules require such notice because the record shows that 21st Century had notice of its payment obligations before its F block licenses were canceled.

The Commission notified 21st Century of the terms of its installment plan on at least six different occasions: (1) Each of the installment plan notes, signed by the President or the Secretary of 21st Century, included an amortization table

setting forth the specific amounts due and the date by which the payments were due; (2) The face of each license issued to 21st Century stated that full and timely payment was required to avoid license cancellation; (3) The *Restructuring Order*, 12 F.C.C.R. 16,436, described the new payment deadlines associated with the restructuring scheme, reiterated the importance of full and timely payments, and provided examples of how to calculate those payments; (4) The *Note Modification* sent after 21st Century elected disaggregation set forth the actual dates for 21st Century's future installment payments; (5) The Commission's payment policy, announced by public notice and subsequently codified at 47 C.F.R. § 1.2110(f), stated that licensees that miss a payment deadline by more than 180 days are in default and face automatic license cancellation, *see Public Notice, Wireless Telecommunications Bureau Provides Guidance on Grace Period and Installment Payment Rules,* 13 F.C.C.R. 18,213 (1998); and (6) The Commission sent notices, which it characterizes as "courtesy payment notices," to remind licensees of their impending payment deadlines.

Notwithstanding these notices of its payment obligations, 21st Century contends that the payment rules were confusing and that it often received incorrect or late payment notices from the Commission, thereby making any notice it did receive ineffective. James LaBelle, 21st Century's Chief Executive Officer, stated in his declaration that 21st Century was "never clear as to the amount of [its] installment payments;" received payment notices late in January 2000; received payment notices for licenses the company no longer owned; and received notices containing incorrect calculations of late fees and accrued interest. Relying on *Trinity Broad. of Florida, Inc. v. FCC*, 211 F.3d 618 (D.C. Cir. 2000), *Salzer v. FCC*, 778 F.2d 869 (D.C. Cir. 1985), *Satellite Broad. Co. v. FCC*, 824 F.2d 1 (D.C. Cir. 1987), and *Gardner*, 530 F.2d 1086, 21st Century maintains that the court should excuse its failure to comply with uncertain rules. However, the cases on which 21st Century relies do not support its position.

In *Trinity*, the court held that a newly announced rule could not be applied against Trinity because the rule was not "ascertainably certain," and Trinity did not have fair notice of

the new requirement. 211 F.3d at 628. The regulation in *Trinity* required companies to establish "minority control" over their stations, and Trinity had done so by making minorities a majority of its governing board. *Id.* Unlike Trinity, 21st Century never attempted to comply with the Commission's rule by making its July 2000 payment in a timely manner, and the approximate amounts and requirements for making the payments were clear at the time 21st Century defaulted, as is evidenced by 21st Century's successful compliance with the payment rule for more than a year. Moreover, 21st Century never claimed in its three post-default-and-license-cancellation letters that its failure to pay timely was related to its inability to understand what it owed. Rather, 21st Century's letters stated that it had not met the payment deadline because it was unable to arrange for timely financing due to its general financial problems.

21st Century's reliance on *Salzer* and *Satellite Broadcasting* is also misplaced. In those cases the failure to follow an unclear rule was excused in light of an attempt to comply and a genuine question of interpretation. In *Salzer*, the Commission had not provided the supplemental form required for a filing and thus it was reasonable for Salzer to file an otherwise complete application, only filing the supplemental form when it became available. 778 F.2d at 875. Similarly, in *Satellite Broadcasting*, the company met its deadline but filed in the wrong place because the rule described the filing location in a "baffling and inconsistent" way. 824 F.2d at 2–4. Here, the requirements of the rule admit of no such confusion, as again is evident from 21st Century's timely payments for more than a year without claiming uncertainty about the amount of payment due. Nor can 21st Century prevail under the rationale of *Gardner*, where the petitioner lacked actual notice of the final decision and therefore missed the filing deadline. 530 F.2d at 1088–90. 21st Century had actual notice of its payment obligations independent of the Commission's January 2000 payment notice, and 21st Century's asserted confusion about what it owed is linked, according to its own correspondence with the Commission, to its lack of timely financing. Even if the payment notices contained errors, unlike *Gardner*, 21st Century knew that payments for

the disaggregated C block licenses were half what they had been before disaggregation, knew that payment for its F block licenses were unchanged, was aware of the original amortization scheme, and had successfully met prior deadlines.

In any event, 21st Century may not "turn a clerical error into a windfall of 'rights it would not otherwise enjoy.'" *State of Oregon*, 102 F.3d 583, 586 (D.C. Cir. 1996) (quoting *Florida Inst. of Tech. v. FCC*, 952 F.2d 549, 553 (D.C. Cir. 1992)). 21st Century's first two post-default-cancellation letters indicate that the reason 21st Century missed the payment deadline was because it was unable to arrange for timely financing; 21st Century sought a waiver of the automatic cancellation rule not because of confusion about the amount it owed but because it was not in possession of sufficient funds to make timely payment. Furthermore, even if it was uncertain about the precise dollar amount, a prudent licensee would have attempted to make "a reasonable effort to comply," *Florida Inst.*, 952 F.2d at 550. As the Commission states in its brief, "discrepancies in payment notices, even had they produced some genuine uncertainty, would hardly have justified 21st Century's decision to make no payment at all." Appellee's Br. at 39.

Accordingly, because 21st Century lacks standing to challenge the cancellation of its C block licenses, we dismiss that portion of its appeal; because 21st Century's hearing contentions are not properly before the court, as 21st Century failed to exhaust its administrative remedies by timely presenting its hearing arguments to the Commission, and its notice contentions fail in light of record evidence that it had sufficient notice of its payment obligations, we affirm the orders of the Commission.

WILLIAMS, *Senior Circuit Judge, concurring in part and dissenting in part*:  I agree with the majority opinion in every respect except the conclusion that we cannot decide the claims regarding the C block licenses.  The majority may well be right in rejecting 21st Century's standing argument, but it does so on the basis of extremely sketchy briefing, resolving a number of substantive issues of communications law en route.  This trip is not necessary.  Under *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), of course, a court faced with a difficult jurisdictional issue generally may not proceed to the merits without resolving that issue, even "where (1) the merits question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied."  *Id.* at 93.  But *Steel Co.* recognized an exception.  Where the court actually *decides* the merits question "in a companion case," there is no need to address the jurisdictional question.  *Id.* at 98.  In such a situation the disposition in the companion case "renders the merits in the present case a decided issue and thus one no longer substantial in the jurisdictional sense." *Id.* (quoting *Norton v. Mathews*, 427 U.S. 524, 530–31 (1976)). Here the disposition of the F block license claims totally resolves the merits on the C block licenses, as no merits difference exists between them.  Since we plainly have jurisdiction over the F block claims, I see no reason not to employ the *Steel Co.* exception here.

The rule in *Steel Co.* is driven by concern that otherwise courts would violate separation of powers by expounding on substantive issues of law where they lack jurisdiction.  *Steel Co.*, 523 U.S. at 101–02.  Here the majority's failure to apply the exception ironically leads it to resolve sharply disputed and ill-briefed substantive issues.  Of course the court always has jurisdiction to determine such questions as are necessary to determining its jurisdiction, so the court does not affirmatively violate *Steel Co.*  But disregard of the *Steel Co.* exception leads it into quite unnecessary merits decisions, in tension with the case's basic message.

Nor can I understand the reason proffered by the majority for non-application of the exception. See Maj. Op. at 7. It seems to be saying that the exception can apply only where the case of questionable jurisdiction is brought by a party different from the one bringing the other case. Nothing in *Steel Co.* suggests any such second-party requirement, and no reason for the requirement comes to mind. To the extent that the majority's wording suggests that different issues are raised with respect to the C and F blocks, that is simply not the case.